**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

FAN MILLS, individually and behalf of all
others similarly situated,

                Plaintiff,

          -against-

SAKS.COM LLC,

               Defendant.

Case No. 1:23-cv-10638 (ER)

**ORAL ARGUMENT REQUESTED**

### REPLY IN FURTHER SUPPORT OF DEFENDANT'S
### MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT

**LOEB & LOEB LLP**
Christopher A. Ott (admitted *pro hac vice*)
901 New York Ave NW
Suite 300 East
Washington, DC 20001
Tel: (202) 618-5000

Christian D. Carbone
Elena De Santis
345 Park Avenue
New York, NY 10154
Tel: (212) 407-4000

*Attorneys for Defendant Saks.com LLC*

## <u>TABLE OF CONTENTS</u>

**Page**

TABLE OF AUTHORITIES .................................................................................................. iii

PRELIMINARY STATEMENT ............................................................................................1

ARGUMENT ..........................................................................................................................1

      I.       Plaintiff Cannot Establish Article III Standing........................................................1

            A.      Plaintiff's Purported Injury Is Not Particularized.......................................1

            B.      Plaintiff Cannot Allege Concrete Harm.......................................................2

      II.     Plaintiff's Claim Fails as a Matter of Law...............................................................7

            A.      Plaintiff Fails to Allege Facts to Support a Claim under the Arizona Statute.............................................................................................7

            B.      Legislative History and Analogous Case Law Likewise Compel Dismissal of the FAC.................................................................................9

CONCLUSION.......................................................................................................................10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alex v. NFL Enters. LLC*,
    No. 1:22-cv-09239 (ALC), 2023 U.S. Dist. LEXIS 172991
    (S.D.N.Y. Sept. 27, 2023)........................................................................................5

*Brown v. Midland Credit Mgmt.*,
    No. 24-civ-1184(PKC)(RML), 2024 U.S. Dist. LEXIS 68301
    (E.D.N.Y. Apr. 15,2024)......................................................................................4-5

*Canon Sch. Dist. No. 50 v. W.E.S. Constr. Co.*,
    177 Ariz. 526 (Ariz. 1994)....................................................................................10

*Carter v. Scripps Networks LLC*,
    670 F. Supp. 3d 90 (S.D.N.Y. 2023)........................................................................5

*DiFolco v. MSNBC Cable, L.L.C.*,
    622 F.3d 104 (2d Cir. 2010)....................................................................................9

*Emmett v. Delta Air Lines*,
    No. 2:22-1568, 2024 U.S. Dist. LEXIS 97812
    (W.D. Pa. June 3, 2024)....................................................................................6, 10

*Katz v. Donna Karan Int'l, Inc.*,
    No. 14-cv-740 (PAC), 2017 U.S. Dist. LEXIS 75299
    (S.D.N.Y. May 17, 2017), *aff'd in part and remanded in part*,
    872 F.3d 114 (2d Cir. 2017)....................................................................................3

*Kidd v. Thomson Reuters Corp.*,
    925 F.3d 99 (2d Cir. 2019)......................................................................................8

*Lewis v. Debord*,
    238 Ariz. 28 (Ariz. 2015)........................................................................................8

*Maddox v. Bank of N.Y. Mellon Trust Co., N.A.*,
    19 F. 4th 58 (2d Cir. 2021) ....................................................................................3

*Martin v. Meredith Corp.*,
    657 F. Supp. 3d 277 (S.D.N.Y. 2023).....................................................................6

*Meyer v. Uber Techs., Inc.*,
    868 F.3d 66 (2d Cir. 2017)......................................................................................9

*Salazar v. NBA*,
    685 F. Supp. 3d 232 (S.D.N.Y. 2023),
    *appeal filed*, Aug. 10, 2023 ................................................................................4

*Schnur v. JetBlue Airways Corp.*,
    No. 2:22-1621, 2024 U.S. Dist. LEXIS 97813
    (W.D. Pa. June 3, 2024) ............................................................................6, 10

*Spokeo, Inc. v. Robins*,
    578 U.S. 330 (2016) ..................................................................................2, 3

*Sprint Commc'ns Co. v. W. Innovations Inc.*,
    618 F. Supp. 2d 1124 (D. Ariz. 2009) .......................................................10

*Sputz v. Alltran Fin., LP*,
    No. 21-cv-4663 (CS), 2021 U.S. Dist. LEXIS 233292
    (S.D.N.Y. Dec. 5, 2021) ..............................................................................5

*Thorne v. Square, Inc.*,
    No. 20-cv-5119 (NGG)(TAM), 2022 U.S. Dist. LEXIS 31810
    (E.D.N.Y. Feb. 23, 2022) ............................................................................9

*TransUnion LLC v. Ramirez*,
    594 U.S. 413 (2021) ..............................................................................2, 3, 4

*Williams v. Portfolio Recovery Assocs., LLC*,
    No. 21-cv- 5656 (DRH), 2022 U.S. Dist. LEXIS 15092
    (E.D.N.Y. Jan. 27, 2022) .............................................................................5

**Statutes and Other Authorities**

A.R.S. § 44-1376 .............................................................................................1

H.B. 2785 Am. Fact Sheet, 47th Leg., 1st Reg. Sess. (Ariz. Apr. 24. 2006) ..................9

H.B. 2726 Summ., 48th Leg., 1st Reg. Sess. (Ariz. Mar. 2, 2007) ............................10

Defendant Saks.com LLC ("Saks") respectfully submits this Reply in further support of its Motion to Dismiss Plaintiff's First Amended Complaint ("Motion" or "Mot." [Dkt. No. 31]).[1]

## PRELIMINARY STATEMENT

Plaintiff attempts to hold Saks liable for using the functional equivalent of a "read receipt" in its own marketing emails, for which Plaintiff and others voluntarily sign up. To do this, Plaintiff asks this federal court sitting in New York—in a case of first impression—to extend the reach of the Arizona Telephone, Utility and Communication Service Records Act, A.R.S. § 44-1376 (the "Arizona Statute" or "Statute") well beyond its text or intended scope. This action is now one of at least five nearly identical lawsuits that Plaintiff's counsel has filed, in hopes that one of them will stick. Here, and in each other case, the respective plaintiff fails to allege facts sufficient to establish Article III standing or facts sufficient to state a claim under the Arizona Statute.

This Court should not be the one to validate such an exaggerated interpretation of an Arizona Statute. Allowing Plaintiff's expansive interpretation to prevail would render the publicly disclosed use of read-receipt technology, which is ubiquitous and necessary in both digital marketing practices and email services generally, unlawful. The FAC should be dismissed in its entirety, with prejudice.

## ARGUMENT

### I.    Plaintiff Cannot Establish Article III Standing

#### A.    Plaintiff's Purported Injury Is Not Particularized

Plaintiff's vague allegations that Saks' purported collection "invaded her privacy and intruded upon her seclusion" (FAC ¶ 5, 61) are entirely inadequate for purposes of Article III

---

[1] Capitalized terms not defined herein have the same meanings as in Defendant's Motion. "Opposition" or "Opp." refers to Plaintiff's Opposition to Defendant's Motion to Dismiss First Amended Complaint [Dkt. No. 33].

standing. Plaintiff fails to rebut her lack of injury in her Opposition, as she merely includes generalized references to "intrusions" that are "highly offensive" without specifying how or why such intrusions are purportedly highly offensive. Opp. at 3. Accordingly, Plaintiff still fails to satisfy the requirements for Article III standing because she has not shown that she has suffered an injury in fact that is concrete, particularized, and actual or imminent. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 422-24 (2021).

In support of her contention that she suffered injury in fact that is concrete and particularized, and actual or imminent, Plaintiff relies not on Saks' purported conduct, but instead on scattershot quotes from lawmakers cautioning about tracking software generally and contemplating potentially worst-case scenarios. This is a far cry from the "particularized" injury required for Article III standing. Indeed, for an injury to be particularized, it "must affect the plaintiff in a personal and individual way." *See Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016) (quoting *Lujan v. Defenders of Wildlife*, 504 US. 555, 560 n.1 (1992)).

### B.    Plaintiff Cannot Allege Concrete Harm

Recognizing that she cannot allege a particularized injury, Plaintiff relies primarily on out-of-circuit cases to support her specious argument that a statutory violation, without more, is sufficient to confer Article III standing. Contrary to Plaintiff's contention, it is well-settled that Article III requires more than a bare statutory violation. *See Spokeo*, 578 U.S. at 340-41 (finding that a plaintiff does not "automatically satisf[y] the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right"). That the Arizona legislature may have identified and elevated an intangible harm in the statute at issue does not relieve Plaintiff of her burden to demonstrate a concrete injury-in-fact. Plaintiff does not satisfy her burden here because: (1) the FAC does not allege a concrete injury separate and apart from a bare procedural violation; and (2) the alleged intangible harm does not have a

close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in American courts. The case law on which Plaintiff relies does not help her clear the threshold required for Article III standing, as those cases involved distinguishable intangible injuries, and plaintiffs there were able to link their intangible injuries to a traditionally recognized harm.

*First,* Plaintiff completely ignores *TransUnion's* holding that "under Article III, an injury in law is not an injury in fact." *TransUnion*, 594 U.S. at 427. Despite Plaintiff's attempt to articulate the contrary, legislatures cannot circumvent Article III standing requirements by "enact[ing] an injury into existence, using its lawmaking power to transform something that is not remotely harmful into something that is." *Id.* at 426 (citation omitted)*; see also Maddox v. Bank of N.Y. Mellon Trust Co., N.A.*, 19 F. 4th 58, 64 (2d Cir. 2021) ("We need not decide whether state legislatures have the same power Congress enjoys to recognize or create legally protectible interests whose invasion gives rise to Article III standing; TransUnion determined that Congress itself enjoys no such power."). Where, as here, a statutory violation is alleged, Article III standing still requires a concrete injury. *See Katz v. Donna Karan Int'l, Inc.*, No. 14-cv-740 (PAC), 2017 U.S. Dist. LEXIS 75299, at *8 (S.D.N.Y. May 17, 2017) (noting further that "an alleged 'bare procedural violation' of a statutory directive, 'divorced from any concrete harm,' is insufficient" for Article III standing) (*quoting Spokeo*, 578 U.S. at 341), *aff'd in part and remanded in part,* 872 F.3d 114 (2d Cir. 2017).

*Second*, it is well settled that such intangible harms can be sufficiently concrete only if they have a "close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in . . . American courts." *Spokeo*, 578 U.S. at 340-41. To establish concrete injury, Plaintiff must show that the intrusion at issue bears a close relationship to harm suffered from intrusion upon seclusion, *see* FAC ¶ 61, namely that the "intrusions" at issue were highly offensive

to a reasonable person.  *See, e.g.*, *Salazar v. NBA*, 685 F. Supp. 3d 232, 241-42 (S.D.N.Y. 2023) (holding that plaintiff had standing where a reasonable person would find it offensive that "private and personal details of their viewing preferences were shared with a third party without their consent so that commercial parties could profit from targeted advertisements that were sent to them"), *appeal filed*, Aug. 10, 2023.  Here, Plaintiff fails to allege any such "intrusions" that are analogous to existing causes of action, and nowhere alleges that the purported intrusions were "highly offensive to a reasonable person."  Instead, the harm Plaintiff vaguely describes in the FAC (FAC ¶¶ 5, 61) is novel and therefore unreasonable.

In an effort to dodge this unavoidable fact, Plaintiff misconstrues Saks' argument as suggesting that an "exact duplicate" to a harm traditionally recognized is required.  Opp. at 9, 11. Saks makes no such argument.  Instead, Saks has merely articulated existing law that Plaintiff must allege a "close relationship" with a traditional harm.  That traditional harm requires the intrusion to be highly offensive.  Without the "highly offensive" element, the traditionally recognized harm falls apart entirely, and a plaintiff cannot establish the "injury in fact" required for Article III standing.  The Supreme Court endorsed the critical role of the "highly offensive" element in its standing analysis in *TransUnion*.  Although the Supreme Court was evaluating a Fair Credit Reporting Act claim, it concluded that adding information to a consumer's credit report is analogous to defamation (*Id.* at 432-33); *however*, the Supreme Court still concluded that there can be *no injury* if that information is not published, as "[p]ublication is 'essential to liability' in a suit for defamation."  *Id.* at 434 (citation omitted).  Similarly, in the instant case, even if this Court found that Saks' purported collection of information was analogous to intrusion upon seclusion, there can be no *injury* for Article III purposes if that intrusion was not highly offensive to a reasonable person.  *See Brown v. Midland Credit Mgmt.*,  No. 24-civ-1184(PKC)(RML), 2024

U.S. Dist. LEXIS 68301, at *5 (E.D.N.Y. Apr. 15,2024) ("For a privacy harm to rise to the level of stating a claim for intrusion upon seclusion, the alleged intrusion **must be highly offensive to a reasonable person.**") (emphasis added) (internal citations and quotation marks omitted).

Plaintiff likewise misconstrues *Sputz v. Alltran Fin., LP,* No. 21-cv-4663 (CS), 2021 U.S. Dist. LEXIS 233292 (S.D.N.Y. Dec. 5, 2021) and *Williams v. Portfolio Recovery Assocs., LLC*, No. 21-cv- 5656 (DRH), 2022 U.S. Dist. LEXIS 15092 (E.D.N.Y. Jan. 27, 2022), each of which hinged on the missing element of a traditionally recognized harm: the "publicity" element of public disclosure of private facts.  Contrary to Plaintiff's Opposition (Opp. at 8), those courts did not hold that the Fair Debt Collection Practices Act *itself* did not bear a close resemblance to a violation of plaintiff's right to privacy.  *See id.*  Rather, those cases found that plaintiffs lacked standing because *their respective claims* failed to allege a "close historical or common-law analogue for [his] asserted injury" *Sputz*, 2021 U.S. Dist. LEXIS 233292, at *7 (alterations in original; citation omitted); *Williams*, 2022 U.S. Dist. LEXIS 15092, at *8-9 (adopting *Sputz*'s analysis and similarly concluding that plaintiff's claims did not establish standing).  Particularly relevant to the *Sputz* court's determination that plaintiff lacked standing was the fact that plaintiff did not allege the requisite "publicity" which is "essential to liability in a suit for public disclosure of private facts." *Sputz*, 2021 U.S. Dist. LEXIS 233292, at *9.

***Third,*** Plaintiff relies on additionally distinguishable cases, which involved circumstances where the traditionally recognized harm was not intrusion upon seclusion.  For example, *Carter v. Scripps Networks LLC*, 670 F. Supp. 3d 90, 95-96 (S.D.N.Y. 2023) and *Alex v. NFL Enters. LLC*, No. 1:22-cv-09239 (ALC), 2023 U.S. Dist. LEXIS 172991, at *6-7 (S.D.N.Y. Sept. 27, 2023) are each inapposite because, there, the traditionally recognized harm was disclosure of private facts, and plaintiff asserted that defendants intentionally disclosed plaintiffs' personally identifiable

information to Facebook without their knowledge and consent. *See also Martin v. Meredith Corp.*, 657 F. Supp. 3d 277, 283 (S.D.N.Y. 2023) (same). The FAC contains no such allegations.

The companion cases of *Emmett v. Delta Air Lines*, No. 2:22-1568, 2024 U.S. Dist. LEXIS 97812 (W.D. Pa. June 3, 2024) and *Schnur v. JetBlue Airways Corp.*, No. 2:22-1621, 2024 U.S. Dist. LEXIS 97813 (W.D. Pa. June 3, 2024) likewise have no bearing on Plaintiff's standing arguments because, as the court explicitly stated at the outset of both opinions, "**Notably** '[t]he Session Replay Code procured by [Defendant] **is not a website cookie, analytics tool, tag, web beacon, or other similar technology."** *See Delta Air Lines*, 2024 U.S. Dist. LEXIS 97812, at *3 (emphasis added) (alterations in original); *JetBlue Airways Corp.*, 2024 U.S. Dist. LEXIS 97813, at *3. Instead, "the data collected by the Session Replay Code identified specific information inputted and content viewed, and thus revealed personalized and sensitive information about website visitors' Internet activity and habits." *See Delta Air Lines*, 2024 U.S. Dist. LEXIS 97812, at *3; *JetBlue Airways Corp.*, 2024 U.S. Dist. LEXIS 97813, at *3. Accordingly, the court's standing analysis is explicitly inapplicable, and Plaintiff cannot dispute this, as the specific articles Plaintiff cites to explain what a "spy pixel is" state that such pixels are "also known as tracking pixels or web beacons[.]" *See* FAC ¶ 30 and n.51.

Unlike the instant case, the court found that plaintiffs had standing in both cases because the injury under the Pennsylvania Wiretap Act bore a close relationship to common law intrusion upon seclusion, eavesdropping (which was an indictable offense at common law), trespass, and others. *See Delta Air Lines*, 2024 U.S. Dist. LEXIS 97812, at *36; *JetBlue Airways Corp.*, 2024 U.S. Dist. LEXIS 97813, at *18-19. Here, however, Plaintiff makes no such comparison other than arguing that collection of her information is an intrusion. Indeed, Plaintiff makes no allegation that Saks' conduct is comparable to an existing tort or crime, which makes sense because

a read-receipt to a solicited email that one requested is neither.  These conclusory allegations remain insufficient to show even a "close relationship" to a harm that has been traditionally regarded as providing a basis for lawsuits in American courts.

Plaintiff does not allege that the pixel recorded any sensitive information like usernames or passwords, credit card information, or any information outside of the emails that Saks itself sent.  Plaintiff's conclusory remarks that Saks' intrusions are "highly offensive," without anything more, are insufficient to establish the concrete and particularized harm Article III requires. Because Plaintiff has not alleged a concrete and particularized injury, she has failed to allege injury in fact.  Accordingly, Plaintiff lacks Article III standing to pursue her claim, and the FAC must be dismissed for lack of subject matter jurisdiction.

## II.    Plaintiff's Claim Fails as a Matter of Law

### A.    Plaintiff Fails to Allege Facts to Support a Claim under the Arizona Statute

The information Plaintiff alleges Saks collected does not fall within the scope of the information protected by the Arizona Statute.  Not only did Plaintiff voluntarily provide certain information to Saks when she registered her email address, but the emails at issue were created and sent *by* Saks *to* Plaintiff.  Plaintiff appears to acknowledge that most of the information purportedly collected is not covered by the Statute, as she now limits her arguments to: (1) access logs; and (2) the path of an electronic communication between the point of origin and the point of delivery. Opp. at 13-14.  Plaintiff's addition of "logs" before the information purportedly collected does not transform the information into "access logs."  Moreover, the articles Plaintiff cites in support describe access logs as collecting different and significantly more information than the FAC alleges Saks collects.  Opp. at 14.  And even if Plaintiff's interpretation was accurate, the Opposition describes generalized access logs, rather than Saks' purported "access logs."

As to the "path of an electronic communication between ***the point of origin*** and ***the point of delivery***" (emphasis added), Plaintiff's attempt to re-write the statute to cover the act of forwarding an email similarly fails. Opp. at 14. The Statute does not prohibit tracking whether an email was forwarded. If the Arizona legislature wanted to include the path of an electronic communication ***after*** the point of delivery, it would have done so. Plaintiff's strained interpretation would force the Court to rewrite the Statute. *See Lewis v. Debord*, 238 Ariz. 28, 31 (Ariz. 2015) ("It is not the function of the courts to rewrite statutes[.]") (internal citations omitted); *Kidd v. Thomson Reuters Corp.*, 925 F.3d 99, 106 n.9 (2d Cir. 2019) (disagreeing with plaintiff's interpretation of statute because "the statute does not include this language" and the court "may not add words to produce what is thought to be a desirable result") (internal citation and quotation marks omitted). Moreover, the "origin" of the email is with ***Saks***, not Plaintiff, so what Plaintiff does with the email after it passes the point of delivery is plainly outside the scope of the Statute. Plaintiff's speculation that "Just because Plaintiff opened the email after it was delivered does not mean it cannot *also* record the point of delivery" (Opp. at 15) is not alleged in the FAC. Even if it were, it could not save Plaintiff's claim.

Plaintiff's remaining contentions are unavailing. Her argument that Saks is not an "entity that maintains communication service records' similar to a 'public utility' or a 'telephone company'" (Opp. at 16) actually supports Saks' position that the Statute was enacted to respond to concerns over pretexting and to address whether additional protections were needed to prevent unauthorized disclosure of information held by telecommunication companies. Mot. at 16.

Plaintiff likewise fails to establish that Saks collected information without authorization, or by fraudulent, deceptive or false means. Whenever an individual accesses Saks' website or creates an online account with Saks, they agree to Saks' Terms and Conditions, including Saks'

Privacy Policy, which explicitly inform users of information that may be collected. *See* Ott. Decl. Exs. B-C. [2]  This is sufficient to put a customer on objectively reasonable notice of the terms contained in the Terms of Service and Privacy Policy links. *See Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 79-80 (2d Cir. 2017) (considering app's terms of service where such terms were only available by hyperlink when an individual signed up); *Thorne v. Square, Inc.*, No. 20-cv-5119 (NGG)(TAM), 2022 U.S. Dist. LEXIS 31810, at *29-30 (E.D.N.Y. Feb. 23, 2022) (same). [3]

Because the information Plaintiff alleges is collected does not fall within the scope of the Statute, and because any such collection is not conducted without authorization or by fraudulent, deceptive or false means, Plaintiff fails to state a claim under the Arizona Statute, and her claims must be dismissed.

> **B.** **Legislative History and Analogous Case Law Likewise Compel Dismissal of the FAC**

Plaintiff contends that the Arizona Statute was passed to prevent the kinds of invasions of privacy that occurred during the HP Pretexting Scandal. Opp. at 19. The legislative history she cites in support simply describes the scandal and the resulting federal legislation, and does not identify the kinds of harms Plaintiff suggests. The Fact Sheet for H.B. 2785 (which eventually became the Arizona Statute) makes clear that the intent and purpose of the Statute was to outlaw pretexting, *i.e.*, "fraudulently gain[ing] access to telephone records by posing as the customer, then offering the records for sale on the Internet without the customer's consent or knowledge[.]" *See* H.B. 2785 Am. Fact Sheet, 47th Leg., 1st Reg. Sess. (Ariz. Apr. 24, 2006). And though the Statute

---

[2] *See* Dkt. Nos. 32-2 and 32-3.

[3] The Court may consider the Terms of Service and Privacy Policy because they are integral to the claims in the complaint. *See DiFolco v. MSNBC Cable, L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) (on a motion to dismiss, courts may consider documents incorporated by reference and integral to the complaint).

was amended a year after its enactment to include records other than telephone records—which Saks never contested (Mot. at 16-17)—the amendment was still rooted in pretexting and did not contemplate the information allegedly collected here.  H.B. 2726 Summ., 48th Leg., 1st Reg. Sess. (Ariz. Mar. 2, 2007).

Finally, it should not have surprised Plaintiff that Saks referenced analogous case law in support of its Motion, as no court has ever interpreted the Arizona Statute in the civil context.  As a result, the Court may look for guidance from other jurisdictions that have addressed similar issues.  *See Sprint Commc'ns Co. v. W. Innovations Inc.*, 618 F. Supp. 2d 1124, 1125 (D. Ariz. 2009); *Canon Sch. Dist. No. 50 v. W.E.S. Constr. Co.,* 177 Ariz. 526, 530 (Ariz. 1994) (concluding that "similar statutes should be construed consistently wherever possible").  Even the cases on which Plaintiff relied for her standing arguments rejected similar claims on the merits.  For example, in *Delta Air Lines*, 2024 U.S. Dist. LEXIS 97812, at *29-31 and *JetBlue Airways Corp*., 2024 U.S. Dist. LEXIS 97813, at *35-36 (each of which rely on the Restatement as Plaintiff has set forth), the court found that the session replay's software collection of data was not "highly offensive to a reasonable person" and dismissed the intrusion upon seclusion claims on that basis. And the session replay software at issue in those cases monitored and recorded for future replay all mouse movements, clicks, scrolls, zooms, and other interactions with such websites (including personal information typed into those websites), and also collected IP address information.  *See Delta Air Lines*, 2024 U.S. Dist. LEXIS 97812, at *3-4; *JetBlue Airways Corp*., 2024 U.S. Dist. LEXIS 97813, at *2-3.  The same result should follow here.

## **CONCLUSION**

For the foregoing reasons, and those set forth in the Motion, Defendant respectfully requests that the Court dismiss Plaintiff's First Amended Complaint, and all claims asserted therein, with prejudice.

Dated:   New York, New York
         July 12, 2024

LOEB & LOEB LLP

By: */s/ Christopher A. Ott*
    Christopher A. Ott (admitted *pro hac vice*)
    901 New York Avenue NW
    Suite 300 East
    Washington, DC 20001
    Tel: (202) 618-5000

    Christian D. Carbone
    Elena De Santis
    345 Park Avenue
    New York, NY 10154
    Tel: (212) 407-4000

    *Attorneys for Defendant Saks.com LLC*

239245100