UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

FAN MILLS, *individually and on behalf of all others similarly situated*,

                       Plaintiffs,

        – against –

SAKS.COM LLC,

                       Defendant.

**OPINION & ORDER**

23 Civ. 10638 (ER)

RAMOS, D.J.:

      Fan Mills brings suit against Saks.com LLC ("Saks") alleging a violation of Arizona's Telephone, Utility and Communication Service Records Act. Doc. 29 ¶ 1; ARIZ. REV. STAT. ANN. § 44-1376 (the "Arizona Statute"). Saks now moves to dismiss for lack of subject matter jurisdiction and failure to state a claim upon which relief can be granted. Doc. 31 at 6. For the reasons discussed below, Saks' motion to dismiss is GRANTED.

## I. BACKGROUND

### A. Factual Background

      Fan Mills is an Arizona resident who alleges that she opened promotional emails from Saks from 2017 to October 2023. Doc. 29 ¶¶ 7–8. Mills alleges that Saks embedded a spy pixel[1] in its promotional emails, which collected information from its recipients such as when the email was read, where it was read, whether and to whom the email was forwarded, their IP address, and other personal details. *Id.* ¶ 4. Mills concedes that she may have signed up to receive emails from Saks, Doc. 36 at 1, but she alleges each time she opened an email, Saks collected her personal information without her consent. Doc. 29 ¶¶ 9, 10.

---

[1] Mills explains that spy pixels are trackers embedded in emails that relay some of the recipients' personal information to the sender. Doc. 29 ¶ 4.

Mills alleges that Saks' collection of her information is a violation of the Arizona Statute, which includes a private right of action. *See id.* ¶¶ 1, 28. The Arizona Statute states that it is a crime for a person to "[k]nowingly procure, attempt to procure, solicit or conspire with another to procure a public utility record, a telephone record or communication service record of any resident of this state without the authorization of the customer to whom the record pertains or by fraudulent, deceptive or false means." A.R.S. § 44-1376.01. The parties agree that the Arizona Statue was passed after a similar, but narrower, federal statute, the Telephone Records and Privacy Protection Act of 2006 (TRPPA) was passed. Doc. 29 ¶¶ 27–28. The federal statute was enacted after a scandal involving the company Hewlett Packard, which, in trying to identify a leak, engaged in pretexting[2] and tracking the paths of emails sent to targeted recipients. *Id.* ¶¶ 21–23. Congress passed the TRPPA to criminalize pretexting, and the Arizona statute went further to criminalize both pretexting and collecting information that would create a "communication service record" without the recipient's consent. *Id.* ¶ 28. The statute defines a communication service record as including:

> subscriber information, including name, billing or installation address, length of service, payment method, telephone number, electronic account identification and associated screen names, toll bills or access logs, records of the path of an electronic communication between the point of origin and the point of delivery and the nature of the communication service provided, such as . . . electronic mail . . . .

A.R.S. § 44-1376(1). Mills alleges that the data Saks collected from its marketing emails without her consent constitutes a communication service record, and therefore, that Saks has violated the Arizona statute. Doc. 29 ¶¶ 56–57. In particular, Mills argues that Saks' actions caused a concrete, intangible harm sufficient to give her Article III standing because its actions had a "close relationship" to a harm "traditionally recognized as

---

[2] "[P]retexting is obtaining certain forms of information under false pretenses. Mainly this relates to the gathering of telephone records and financial information . . . ." Andrew B. Serwin, Information Security and Privacy: A Guide to Federal and State Law and Compliance, § 15:1, 2024–2025 ed., (2024).

providing a basis for a lawsuit in American courts." Doc. 33 at 5 (citing *TransUnion LLC v. Ramirez*, 594 U.S. 413, 440 (2021)). Specifically, Mills asserts that Saks' actions are similar to the common law tort of intrusion upon seclusion, a form privacy invasion, which has been found to give plaintiffs standing in certain circumstances. *Id.* at 3; *see also* Restatement (Second) of Torts § 652B (Am. Law Inst. 1977).

Saks argues that Mills does not have standing to assert this claim because she fails to allege a concrete injury and, in the alternative, that she fails to state a claim under the Arizona Statute. Doc. 31 at 7–8, 12. Specifically, as to standing, Saks claims that Mills does not plead facts sufficient to establish a concrete injury. Doc. 31 at 7. Saks compares its email pixel technology to commonly-used "read receipt" technology, which notifies senders whether their email was read, and maintains that the technology would not rise to a level "highly offensive to a reasonable person." *See id.* at 8–9; *see also* Restatement (Second) of Torts § 652B (Am. Law Inst. 1977). Therefore, its technology would not constitute intrusion upon seclusion, and thus not be considered an intangible, concrete harm sufficient to assert standing.

Saks alternatively argues that Mills has failed to state a claim for relief under the Arizona statute. Doc. 31 at 12. Saks alleges that the information it collects does not constitute a "communication service record" as defined by the statute. *Id.* Saks also states that in contrast to the Hewlett Packard scandal where the company collected information with an intent to deceive, Mills voluntarily provided her email to Saks and it simply collected read receipts. *Id.* at 8, 13. Saks also argues that even if the Court were to find that it procured a "communication service record," its actions still would not violate the statute as the statute permits such records "[a]s may be necessarily incident to the rendition of the service . . . ." Doc. 31 at 13–14; *see also* A.R.S. § 44-1376.02(B)(3). Saks asserts that its Privacy Policy allows that:

> Saks may use the information collected as necessary to, *inter alia*, validate, deliver, and track customers' orders; to enhance customers' online shopping experience; and to measure and improve the

3

> effectiveness and performance of Saks' sites, products and services, and customer service, each of which is integral to and necessary for Saks to maintain its online shopping platform.

Doc. 31 at 13–14; *see also* Doc. 21-3. Therefore, Saks argues that its actions fall under the rendition of services exemption under the statute. Doc. 31 at 13–14.

### B. Procedural History

Mills filed the instant suit on December 6, 2023. Doc. 1. On April 10, 2024, Saks moved to dismiss Mills' complaint. Doc. 19.

Mills then filed her first amended complaint ("FAC") on May 17, 2024. Doc. 29. On June 7, 2024, Saks moved to dismiss the FAC for lack of subject matter jurisdiction for failure to sufficiently allege standing and failure to state a claim. Doc. 30.

## II. LEGAL STANDARD

### A. Rule 12(b)(1)

Under Rule 12(b)(1), a court must dismiss an action for lack of subject matter jurisdiction if it "lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000) (citing Fed. R. Civ. P. 12(b)(1)). When a defendant moves to dismiss a case under rules 12(b)(1) and 12(b)(6), the Court must consider the 12(b)(1) motion first before it makes a decision on the merits. *See Baldessarre v. Monroe-Woodbury Century School Dist.*, 820 F. Supp. 2d 490, 499 (S.D.N.Y. 2011), *aff'd sub nom. Baldessarre ex rel. Baldessarre v. Monroe-Woodbury Century School Dist.*, 496 F. App'x 131 (2d Cir. 2012). In 12(b)(1) motions, the party who is claiming subject matter jurisdiction bears the burden of proving it exists by a preponderance of the evidence. *Makarova*, 201 F.3d at 113. To resolve 12(b)(1) disputes over subject matter jurisdiction, a court may reference evidence outside of the pleadings to make a determination. *Gonzalez v. Inn on the Hudson LLC*, No. 20 Civ. 9196 (ER), 2022 WL 974384, at *2 (S.D.N.Y. Mar. 30, 2022).

### B. Rule 12(b)(6)

In considering a motion to dismiss pursuant to Rule 12(b)(6), a court accepts all factual allegations in the complaint as true and draws all reasonable inferences in the plaintiff's favor. *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012). But "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. This standard "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). To state a plausible claim, the plaintiff must "'raise a reasonable expectation that discovery will reveal evidence' of the wrongdoing alleged, 'even if it strikes a savvy judge that actual proof of those facts is improbable.'" *Citizens United v. Schneiderman*, 882 F.3d 374, 380 (2d Cir. 2018) (quoting *Twombly*, 550 U.S. at 556). If the plaintiff has not "nudged [the] claims across the line from conceivable to plausible, [the] complaint must be dismissed." *Twombly*, 550 U.S. at 570.

### III. DISCUSSION

#### A. Standing

Saks moves to dismiss for lack of standing and failure to state a claim. Doc. 31. Mills alleges that she has standing because she has suffered a "highly offensive" harm, analogous to those typical to invasion of privacy or intrusion upon seclusion claims. Doc. 33 at 2–3. She alleges Saks invaded her privacy by engaging in "invasive surveillance" and "clandestine[ly] collecti[ng]" her information. Doc. 29 ¶ 5. Saks describes its actions as "at most benign technical harm," comparing its email pixels to

5

typical "read receipt" technology that a reasonable person would not consider offensive. Doc. 31 at 8, 13.

Because Article III of the Constitution only gives federal courts the power to resolve "Cases" and "Controversies," plaintiffs must show that they have standing, or a personal stake, in a case. *TransUnion,* 594 U.S. at 423. To establish standing, plaintiffs must show that they have suffered an injury that is (1) concrete and particularized; and (2) actual or imminent. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). Plaintiffs must also demonstrate that the injury is traceable to the defendant's conduct and that the court is capable or remedying the injury by a favorable decision. *Id.* at 560–61. To be considered particular, an injury "must affect the plaintiff in a personal and individual way." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016).

Mills seeks a declaratory judgment, damages, and injunctive relief. Doc. 29 at 19. "[S]tanding is not dispensed in gross," so here, she must demonstrate standing separately for injunctive relief and damages. *Lewis v. Casey*, 518 U.S. 343, 358 n.6 (1996); *see also Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 185 (2000) ("[A] plaintiff must demonstrate standing separately for each form of relief sought."). Therefore, the Court will analyze the requests separately.

1. *Injunctive Relief*

In order to establish standing on a claim for injunctive relief, "a person exposed to a risk of future harm may pursue forward-looking, injunctive relief to prevent the harm from occurring, at least so long as the risk of harm is sufficiently imminent and substantial." *TransUnion*, 594 U.S. at 435. In this inquiry plaintiffs may not "rely on past injury to satisfy the injury requirement but must show a likelihood that he or she will be injured in the future." *Deshawn E. by Charlotte E. v. Safir*, 156 F.3d 340, 344 (2d Cir. 1998). Mills has not asserted that Saks' actions present a risk of future harm. She does not express a fear of disclosure of personal information nor does she assert any intent

6

from Saks to use her information to harm her in the future. As such, Mills does not have standing to pursue injunctive relief.

2. *Damages*

Unlike a claim solely for injunctive relief, "[i]n suits for damages, 'the mere risk of future harm, standing alone, cannot qualify as a concrete harm—at least unless the exposure to the risk of future harm itself causes a separate concrete harm.'" *Maddox v. Bank of New York Mellon Trust Co., N.A.*, 19 F.4th 58, 63 (2d Cir. 2021) (citing *TransUnion*, 594 U.S. at 436).

For an intangible injury to be concrete, it must bear "a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in . . . American Courts." *Spokeo*, 578 U.S. at 341. A statute's grant of a private cause of action, alone, is not sufficient because the court will not recognize standing when it encounters a "bare procedural violation, divorced from any concrete harm . . . ." *Id.*

In this case, Mills argues that the right of action in the Arizona statute should be interpreted to grant her standing. Doc. 33 at 5–6. She also contends that her alleged injuries are analogous to those where the tort of intrusion upon seclusion were found to establish a concrete injury. *Id.* at 6–7. To further her assertion, she analogizes this case to violations of the Video Privacy Protection Act ("VPPA") and the Telephone Consumer Protection Act ("TCPA"). *Id.*; *see also* 18 U.S.C. § 2710; Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2, 105 Stat. 2394.

a. *Procedural Violation*

In her response to the motion, Mills cites cases where courts found that in *some* circumstances when a statute grants a procedural right, the plaintiff "need not allege any additional harm beyond the one Congress has identified." *Spokeo*, 578 U.S. at 342 (*citing Federal Election Comm'n v. Akins*, 524 U.S. 11, 20–25 (1998) (conferring standing after

7

an *informational injury*[3])); *Public Citizen v. Dep't of Justice*, 491 U.S. 440, 449 (1989) (same).  However, *Spokeo* established that "alleging a bare procedural violation" will not automatically grant standing, and *TransUnion* emphasized that legislatures "may not simply enact an injury into existence, using [their] lawmaking power to transform something that is not remotely harmful into something that is."  *Spokeo*, 578 U.S. at 331; *TransUnion*, 594 U.S. at 426 (citation omitted).  The Second Circuit has also clarified that an "informational injury," which can sometimes give plaintiffs standing, is not sufficient to confer standing "without a concrete downstream injury-in-fact."  *See Guthrie v. Rainbow Fencing Inc.*, 113 F.4th 300, 307 (2d Cir. 2024).  As it relates to this case, Mills' allegation that Saks violated the Arizona Statute is not similar to a "procedural violation" or an "informational injury," where defendants did not follow a process mandated by statute or engaged in "the unlawful withholding of requested information."  *Id*. at 306–307.  Even if it was such a violation, *Guthrie* makes it clear that a concrete, downstream harm must still exist.  *Id.* at 311.  Therefore, Mills must still establish a concrete harm because "an injury in law is not an injury in fact."  *TransUnion*, 594 U.S. at 427.

    b.  Intrusion Upon Seclusion

The intrusion upon seclusion tort, a type of invasion of privacy, declares that "[o]ne who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns, is subject to liability to the other for invasion of his privacy, if the intrusion would be *highly offensive to a reasonable person*."  Restatement (Second) of Torts § 652B (Am. Law Inst. 1977) (emphasis added).  Therefore, the tort is aimed at a violation or invasion into matters that a person would deem deeply private, personal, and confidential.

The Restatement establishes that intrusion upon seclusion is aimed at invasions of privacy that are an "investigation or examination into [] private concerns," and that there

---

[3] An informational injury is one where an individual is "deprived of information to which he is entitled[.]" *Harty v. West Point Realty, Inc.*, 28 F.4th 435, 444 (2d Cir. 2022).

is "no liability unless the interference with the plaintiff's seclusion is a substantial one." *Id*. cmts. b, c. However, while Saks did collect information about Mills in regard to the particular emails that it sent, it did not receive any further *substantial* information about other spheres of Mills' life. The Restatement provides examples such as opening private mail, searching safes or wallets, or examining bank accounts or private documents as illustrative of injuries considered an intrusion upon seclusion. *Id.* If Mills alleged that Saks was using pixels "to trawl through the contents of unrelated personal messages, or to gain access to the camera of the subscriber's device, such invasions of privacy likely would be held comparable to common-law intrusion on seclusion . . . regardless of whether those messages or video recordings were disseminated elsewhere." *Hartley v. Urban Outfitters, Inc.*, No. 23 Civ. 4891 (CMR), 2024 WL 3445004, at *13–14 (E.D. Pa. July 17, 2024). However, Mills' allegations do not rise to that level of intrusiveness as there is not an intrusion into personal and intimate details about traditionally private elements of her life. Therefore, the harms Mills alleges are not "substantial" and do not reach the level of being "highly offensive to the ordinary reasonable man." Restatement (Second) of Torts § 652B cmt. d (Am. Law Inst. 1977).

    c. Analogous Harms

Mills cites several cases concerning alleged violations of the VPPA to demonstrate how courts have found standing where they found a close relationship between certain harms and the tort of intrusion upon seclusion. Doc. 33 at 6–7.

The VPPA prohibits the *disclosure* of an individual's video rental and sale records. In this case, Saks' actions differ in nature from claims typical to the VPPA because Saks did not disclose any of Mills' information to third parties. In the VPPA cases cited by Mills, the *disclosure* itself was considered offensive. In fact, the case law that Mills references relies less on the tort of intrusion upon seclusion and more on *TransUnion*'s finding that "disclosure of private information" is an intangible harm traditionally recognized to confer standing. *See Salazar v. Nat'l Basketball Ass'n*, 118 F.4th 533, 537

9

(2d Cir. 2024) ("His core alleged harm—that his personal information was disclosed to a third party, without his consent, in violation of the VPPA—'has a "close relationship" to a harm traditionally recognized as providing a basis for a lawsuit in American courts': public disclosure of private facts.") (quoting *TransUnion*, 594 U.S. at 417); *Carter v. Scripps Networks, LLC*, 670 F. Supp. 3d 90, 95 (S.D.N.Y. 2023) (finding standing due to the disclosure of private information recognized in *TransUnion*).  In this case, there is no such disclosure.  Though Saks collected information from its email recipients, Mills does not allege that there was any disclosure of the information to a third party.  As such, the harm sought to be remedied by the VPPA is not present here and the analogy is therefore not sufficient to confer standing on Mills.

    Mills also cites to TCPA cases.  Doc. 33 at 7.  While privacy interests were a primary concern of the TCPA, *Dickson v. Direct Energy, LP*, 69 F.4th 338, 341 (6th Cir. 2023), the statute was aimed at unknown robocalls and telemarketers contacting individuals without their consent.  *See* TCPA § 2, 105 Stat. 2394; *see also Melito v. Experian Marketing Solutions, Inc.*, 923 F.3d 85, 93 (2d Cir. 2019) (citations omitted) ("'[N]uisance and privacy invasion' were the harms Congress identified when enacting the TCPA."); *see also Gorss Motels, Inc. v. Lands' End, Inc.*, 997 F.3d 470, 476 (2d Cir. 2021); *Urgent One Med. Care, PC v. Co-Options, Inc.*, No. 21 Civ. 4180 (JS) (SIL), 2022 WL 16755154, at *5 (E.D.N.Y. June 1, 2022), *report and recommendation adopted*, No. 21 Civ. 4180 (JS) (SIL), 2022 WL 4596754 (E.D.N.Y. Sept. 30, 2022).  The legislative history makes it clear that "[n]uisance and privacy invasion" stemming from telemarketing were the concrete harms that the TCPA was explicitly intending to address. TCPA § 2, 105 Stat. 2394, 2934–95.  Therefore, in the case of the TCPA, Congress was "elevat[ing] to the status of legally cognizable injuries[, a] concrete, de facto injur[y] that [was] previously inadequate in law." *TransUnion*, 594 U.S. at 425 (quoting *Spokeo*, 578 U.S. at 341).  Here, Mills does not cite any case law or to the legislative history establishing that the intent of the Arizona legislature was to identify the use of email pixel

technology as a concrete injury. *See Hartley*, 2024 WL 3445004, at *4 ("The Court has not identified (and the parties do not cite) any relevant guidance from the Arizona courts interpreting the provisions of the Arizona Records Act in the context of a civil case for damages or injunctive relief.").

Standing can be found in TCPA cases where recipients did not consent to be contacted, had no connection to the sender of the marketing material, and had no choice but to receive the communication. Mills alleges she did not consent to Saks' collection of her information, Doc. 33 at 2. However, Mills concedes that she "may have signed up to receive emails," Doc. 36 at 1, and has "frequently opened emails from Defendant to review promotional materials," Doc. 29 ¶ 8. This distinguishes her claims from those typical to the TCPA. Mills was not only familiar with Saks and opened its emails, but she also never unsubscribed to its communications and willfully engaged with its materials.

Mills' analogy to the TCPA also fails because in many cases where standing was established, the court based its determination on the inability of the recipient to block automatic communications from senders. *See Urgent One Medical Care, PCI,* 2022 WL 16755154, at *6 (occupation of a fax machine that automatically prints incoming communications on paper using toner and ink); *Gorss Motels, Inc.*, 997 F.3d at 476 (same). In the TCPA, the privacy element is the inability to prevent incoming communication from an unknown source. Similarly, when communications from telemarketers come in over the phone or fax, for example, it makes the devices unable to receive other communications during that period, thus making it an intrusion. In this case, Mills not only knew the source was Saks, but she welcomed communications from Saks, notwithstanding its collection of her information. *See* Doc. 29 ¶¶ 7–8. Though there are some similarities between the TCPA and the Arizona Statute in that they are both targeting communications, the intents and effects of the statutes are very different. Therefore, the TCPA does not provide a sufficient analogy for the court to recognize standing here.

11

While in determining whether a concrete harm exists, the Court does not "require an exact duplicate in American history and tradition," the Court also may not "loosen Article III based on contemporary, evolving beliefs about what kinds of suits should be heard in federal courts." *TransUnion*, 594 U.S. at 424–25.  Mills asks the Court to expand standing to an alleged injury previously unrecognized.  Ultimately, however, her alleged injuries do not have a historical analog sufficient to confer standing, and thus there is no case or controversy for the court to examine.

### B. Merits

Even if Mills had standing, her claim would fail on the merits.  Mills' claim that Saks violated the Arizona Statute is premised on Saks' use of spy pixels in its promotional emails to collect certain information when the emails are opened.  Such conduct falls outside the scope of the Arizona Statute.

Recent Arizona court decisions have determined that similar spy pixels do not collect "communication service records" within the meaning of the Arizona Statute.  For example, in *Carbajal v. Home Depot U.S.A., Inc.*, the District of Arizona held that "sending marketing emails and collecting information through tracking pixels – simply is not covered by the [Arizona Statute]." No. 24 Civ. 00730 (PHX) (DGC), 2024 WL 5118416, at *5 (D. Ariz. Dec. 16, 2024).  Much like the spy pixels in the instant case, the spy pixels at issue in the *Carbajal* case were embedded in promotional emails, and they "reported information to Defendant when the email was opened, including when, where, and for how long it was opened; the recipient's email address, client type, and path data; the device used to open the email; whether the email was forwarded or printed; and whether any links in the email were clicked." *Id.* at *1.  Plaintiff Carbajal subscribed to the marketing email list but did not specifically consent to the use of spy pixels, and like Mills, she claimed that "each time she opened a marketing email from Defendant the tracking pixel violated the [Arizona Statute] by impermissibly procuring a 'communication service record' related to [her]." *Id.*  In dismissing the action, the

*Carbajal* court explained that "the clear purpose of the [Arizona Statute] is to protect the records that three kinds of entities – telephone companies, public utilities, and communication service providers – collect about their subscribers and customers." *Id.* at *3. That is, it "covers businesses such as internet service providers that deliver actual communication services to subscribers, rather than retailers engaged in selling goods and services who communicate with customers by email." *Id.*

The *Carbajal* court also echoed an Arizona state court decision, *D'Hedouville v. H&M Fashion USA, Inc.*, which interpreted the Arizona Statute and evaluated its legislative history, ultimately dismissing a similar claim that tracking pixels in marketing emails purportedly violated the Arizona Statute. No. C20243386, at *3 (Ariz. Super. Ct. Oct. 11, 2024). The *Carbajal* court noted that a "communication service record," as defined in the Arizona Statute, is expressly limited to "subscriber information"; by contrast, information such as "when and how an email was opened, how long it was opened, what device was used, the associated IP address of the recipient, and whether it was forwarded – is not a 'communication service record' or a type of 'access log' protected by [the Arizona Statute]." 2024 WL 5118416, at *4–5 (quoting *D'Hedouville*, No. C20243386, at *4).

### C. Leave to Amend

Finally, Mills requests leave to amend her complaint, "[t]o the extent the Court grants any aspect of Defendant's Motion." Doc. 33 at 20. Rule 15 provides that leave to amend should be "freely give[n] ... when justice so requires." Fed. R. Civ. P. 15(a)(2). A district court may deny leave to amend, however, based on "futility of amendment." *Ruotolo v. City of New York*, 514 F.3d 184, 191 (2d Cir. 2008) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)). Because the defects in Mills' complaint cannot be cured with an amendment, the Court declines to grant Mills leave to amend her complaint.

## IV. CONCLUSION

For the foregoing reasons, Saks' motion to dismiss is GRANTED. The Clerk of Court is respectfully directed to terminate the motions, Docs. 19, 30, and close the case.

It is SO ORDERED.

Dated:  January 6, 2025
        New York, New York

EDGARDO RAMOS, U.S.D.J.